**STATE of Tennessee, Appellee,**

v.

**Willie Demorris LOCUST, Appellant.**

Court of Criminal Appeals of Tennessee,
at Jackson.

June 7, 1995.

Permission to Appeal Denied Nov. 6, 1995.

Dyer County; Joe G. Riley, Jr., Judge (Aggravated Sexual Battery; Aggravated Burglary).

G. Stephen Davis, District Public Defender, Clarence U. Cochran, Asst. Dist. Public Defender, Dyersburg, for Appellant.

Charles W. Burson, Attorney General & Reporter, Cecil H. Ross, Assistant Attorney General, Criminal Justice Division, Nashville, C. Phillip Bivens, District Attorney General, John W. Price, Asst. Dist. Attorney General, Dyersburg, for Appellee.

## OPINION

SUMMERS, Judge.

The appellant, Willie D. Locust, appeals the judgment of the Dyer County Circuit Court approving a jury verdict of guilty of one count of aggravated sexual battery and one count of aggravated burglary. The Honorable Joe G. Riley, Jr., sentenced appellant to an effective ten years in the Department of Correction. This sentence runs consecutively to a prior twenty-year sentence for aggravated rape and another assault conviction. The appellant has presented two issues for our review:

I. Whether the trial judge erred by denying a motion for a new trial based on an alleged conflict of interest in the District Attorney's office.

II. Whether the evidence was sufficient to support the convictions.

We affirm the judgment of the trial court in all respects.

## STATEMENT OF THE CASE

A true bill of indictment alleging both counts was returned by the Dyer County Grand Jury on June 14, 1993. Honorable James E. "Jimmy" Lanier filed a motion for a preliminary hearing on June 29, 1993. The record reflects that Mr. Lanier was an Assistant District Public Defender with an office in Dyersburg. No other motions or pleadings were filed by Mr. Lanier. All other pretrial motions were filed either by the District Public Defender, Stephen Davis, or by the Assistant District Public Defender, Clarence Cochran. Mr. Cochran represented the appellant at the trial, where his client was convicted on both counts. A sentencing

hearing was held by Judge Riley on February 15, 1994.

During appellant's testimony at his sentencing hearing, he stated that Mr. Lanier had represented him on the present charges and had filed a motion for a preliminary hearing. According to the appellant, after filing the motion Mr. Lanier became an Assistant District Attorney General on July 1, 1993. Appellant claimed that confidential information given by him to Mr. Lanier was conveyed to the District Attorney General or his assistants. This information, according to the appellant, prejudiced his right to receive a fair trial in the instant case.

Appellant's original motion for new trial was filed on January 27, 1994. Nothing was mentioned about any alleged conflict with Mr. Lanier. It was not until after the sentencing hearing that an amended motion was filed on February 24, 1994. This amended motion states as follows:

> That the defendant alleges that during his trial confidential information he gave his prior attorney, James E. Lanier, was divulged to the prosecutor without his consent and that his prior attorney, James E. Lanier, represented him as a Public Defender until July 1, 1993, at which time James E. Lanier became an Assistant District Attorney thereby, creating a conflict of interest in the office of the District Attorney as well as a breach of confidentiality between attorney and client.

The record does not include a transcript of a motion for new trial hearing. There is only an order dated March 11, 1994, from the trial judge overruling the new trial motion. The record does reflect that an order of transportation was filed transporting the appellant from the Department of Correction to the Dyer County Courthouse on March 4 and 11, 1994, but we can assume that he probably was transported on one or both of those days for a new trial hearing.

## FACTS

The victim[1] was sleeping alone in her home in Newbern on March 26, 1993. Her back door was locked. In the early morning hours her small dog awakened her by barking. She got up to discover what was bothering the dog and turned on a light in the living room. Then a male intruder "came up into [her] face." The man had a knife in his left hand and a tire tool in his right hand. Brandishing the knife, he said "I'm going to kill you, bitch." She struggled with the assailant. Exercising unbelievable courage and a will to survive, the victim grasped the knife by its blade as the intruder tried to strike her. They struggled from the dining room into the kitchen area. The man slammed her against the refrigerator causing water from the refrigerator overflow pan to spill out onto the floor. The man got on top of her. She testified that he indicated that he was going to "get something out of the deal," indicating that he was going to sexually assault her. He reached down into her panties and felt of her genital area. After he briefly allowed her to get up, she struggled again and ultimately was able to break free: She fled out the back door, went next door, and called the police.

During the investigation of the crimes, the victim positively identified the appellant, Willie D. Locust, in a photographic lineup. At the trial she identified him as the man who sexually attacked her and burglarized her house. A nurse from the local hospital testified that she treated the victim for lacerations to her hand, bruises, multiple abrasions, and a small puncture wound to her back. The nurse also testified that the victim was upset and crying when she came to the hospital after the assault.

Two officers of the Newbern Police Department corroborated the victim. They also testified about signs of forced entry and pry marks on the rear door. These pry marks were consistent with a large screwdriver or a tire tool. They also corroborated the victim's testimony in that there were signs of struggle in the house.

The defendant made a futile attempt at an alibi defense. The Assistant District Attorney General was successful in impeaching not only the alibi witnesses but also the appellant who testified in his own defense. The appel-

---

1. We see no sense in identifying the victim by name.

lant insisted that he had been in the company of his friends on the night in question and did not go to the victim's house.

Choosing not to believe the appellant or his witnesses, the jury found credibility in the prosecution's case. The appellant was convicted as charged on both counts.

## I.

■ We will first address the appellant's issue as to a conflict of interest in the District Attorney General's office. There is no question that under the Canons of Professional Ethics and judicial opinions from across the country that attorneys cannot represent conflicting interests or discharge inconsistent duties. They simply cannot serve two masters. This is particularly true when a defense lawyer later becomes a prosecutor involving the same case and the same defendant. The allegations against the District Attorney General's office are strong. *See* Rule 8, DR5–105, Rules of the Tennessee Supreme Court; *State v. Phillips,* 672 S.W.2d 427 (Tenn.Crim.App.1984); *Mattress v. State,* 564 S.W.2d 678 (Tenn.Crim.App. 1977). The proof, however, is weak.

■ This motion should have been made prior to trial pursuant to Rule 12 of the Tennessee Rules of Criminal Procedure. That rule is designed for motions such as this. The record indicates that trial counsel practiced in the same District Public Defender's office from which Mr. Lanier supposedly departed. The record is clear that the same District Public Defender, Mr. Davis, was the same head of the agency during the entire case. Mr. Cochran knew or should have known about Mr. Lanier's supposed involvement when Mr. Cochran was appointed to represent the appellant early in the proceedings. A pretrial motion should have been filed at that time. Had there been a conflict, the trial judge could have ruled on the issue and appointed a District Attorney pro tempore to represent the state. *See* Article VI, Section 5, Constitution of Tennessee; T.C.A. § 8–7–106 (1993).

Rule 12 provides that the following types of pretrial motions must be made prior to trial:

(1) Defenses and objections based on defects in the institution of the prosecution; or

(2) Defenses and objections based on the defects in the indictment, presentment or information....

■ If a party fails to raise such defenses or objections prior to trial which must be made pretrial, such failure will be considered a waiver of the issue. *See* Tenn.R.Crim.P. 12(f). The reason for these rules is simple. Matters that are important and not jurisdictional should be raised before trial so that we will only have a single trial. Judicial resources are conserved; time is not wasted.

■ The record before us contains no transcript of any testimony that substantiates appellant's allegation about Mr. Lanier. If the issue was argued, we simply do not have the testimony or a statement of the evidence before us. Our Court must make decisions based on matters within the record and not outside of the record. When an appellant or any party seeks review of issues before our Court, that party must prepare a record which conveys a fair and complete account of what transpired in the trial court. If the record is incomplete, this Court is precluded from considering the issues raised. We must conclusively presume that the judgment of the trial court was correct. *See State v. Matthews,* 805 S.W.2d 776, 784 (Tenn.Crim.App.1990).

There is no proof as to when Mr. Lanier joined the District Attorney General's office, assuming that he did in fact. There is absolutely no evidence concerning the allegation of divulging confidential information. There is no evidence concerning whether or not there was an imputed disqualification of the District Attorney's office based upon Mr. Lanier's prior involvement in the case. There is no evidence about whether or not the District Attorney General's office took measures designed to prevent any breach of confidence. We will not second-guess the trial court. We will conclusively presume that the evidence does not preponderate against the finding of the trial judge in denying the motion for new trial.

As to this issue, we find that it is waived because it was not presented pretrial. Notwithstanding waiver, we find that it has not been proven. The only semblance of evidence is the unsupported allegation of the appellant and trial counsel in the amended motion for new trial.

## II.

We will next address the issue of sufficiency of the evidence. In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn.1983). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973). The appellant has the burden of overcoming this presumption of guilt. *Id.*

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985); T.R.A.P. 13(e). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn.1984); *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn.Crim.App.1978).

The victim testified that the appellant burglarized her home. She identified him pretrial in a photographic lineup. She identified him as her assailant when she testified at the trial. She testified that he fondled her in the sexual area and made unlawful sexual contact with her while brandishing a weapon. Furthermore, he caused bodily injury to her in the forms of cuts, abrasions, and lacerations.

Appellant's defense of alibi was flimsy at best. His witnesses were contradicted. His testimony was weak. Comparing his proof with the unequivocal testimony of the brave victim, the jury had no problem in convicting the appellant of aggravated sexual battery and aggravated burglary. We find that the evidence is sufficient for any rational trier of fact to have found this appellant guilty of the two crimes charged. The evidence is sufficient as to both crimes.

## CONCLUSION

The bald accusations against appellant's former appointed counsel were waived and the evidence is not supported by the record. The evidence to convict the appellant on both counts is sufficient, indeed overwhelming. The judgment of conviction and concomitant sentences are affirmed in all respects.

**AFFIRMED.**

PEAY and HAYES, JJ., concur.