**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**APRIL 1999 SESSION**

**FILED**

June 1, 1999

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 01C01-9806-CC-00263 |
| | ) | |
| vs. | ) | Montgomery County |
| | ) | |
| CALVIN EUGENE HEAD, | ) | Honorable Robert W. Wedemeyer |
| | ) | |
| Appellant. | ) | (Possession of Cocaine with |
| | ) | Intent to Sell) |
| | ) | |
| | ) | |

**FOR THE APPELLANT:**

**MICHAEL R. JONES**
19th District Public Defender
110 Sixth Avenue, West
Springfield, TN 37172

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General & Reporter

**ELIZABETH B. MARNEY**
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

**JOHN WESLEY CARNEY, JR.**
District Attorney General

**HELEN O. YOUNG**
Assistant District Attorney General
204 Franklin Street, Suite 200
Clarksville, TN 37040

**STEVE GARRETT**
Assistant District Attorney General
500 South Main Street
Springfield, TN 37172

OPINION FILED: _____

**AFFIRMED**

**JAMES CURWOOD WITT, JR., JUDGE**

## OPINION

The defendant, Calvin Eugene Head, appeals from his Montgomery County Circuit Court conviction and from the resulting sentence by the trial court. A jury convicted the defendant of the Class C felony of possession of cocaine with intent to sell, and after a sentencing hearing, the trial court imposed a Range I sentence of five years confinement in the Tennessee Department of Correction and ordered the sentence to be served consecutively to a ten-year sentence previously imposed upon the defendant in an unrelated Montgomery County robbery case. In this appeal, the defendant challenges the sufficiency of the convicting evidence and asserts that the trial court erred in sentencing him to a five-year sentence to be served consecutively to the previous ten-year sentence. After a review of the record, the applicable law, and the briefs of the parties, we affirm the judgment of the trial court.

At about 9:30 p.m. on August 31, 1995, a Clarksville police officer observed the defendant and a companion standing in a street cul-de-sac near a low-income housing project in Clarksville. The officer observed the defendant and his companion "flagging" at passing vehicles and described "flagging" as a means of soliciting customers for drug sales. The neighborhood was known for drug trafficking. After observing the defendant and his companion flagging a number of vehicles, the officer radioed three fellow officers who were parked nearby. In response to the radio call, the three officers drove to the cul-de-sac in an unmarked, detective-type police car. As one officer emerged from the car, he shined a flashlight onto the defendant and his companion, identified himself as a police officer, and asked to speak with them. The officer was clothed in a police "identification" jacket with yellow lettering, wore a badge belt, and a service weapon. The defendant and his companion had begun to walk away from the scene but ran when the officer said "police." The defendant and his companion did not stop when the officer yelled, "Police officer, stop." The officers pursued and then apprehended

both the defendant and his companion. The officers handcuffed the defendant and searched his clothing. In his left front pants pocket, they found some bills of currency totaling $68 wrapped around a folded piece of foil. Inside the foil, the officers found fourteen pieces of crack cocaine weighing 0.5 grams.

The officer who initially accosted the defendant testified that the management of the housing authority in the neighborhood previously had provided the police department with copies of "criminal trespass letters" and had solicited the department's assistance in curtailing crime in the area by ridding the housing projects of trespassers. The officer, who did not personally witness the defendant's "flagging" activity, testified that he desired to speak to the defendant in order to determine if he lived in the adjacent housing project.[1]

The defendant did not testify and offered no witnesses in his defense. On August 28, 1996, after the August 1995 commission of the drug offense now under review, the defendant committed the aggravated robbery that was charged in Montgomery County Circuit Court case number 37849. He was then convicted in the present case on February 20, 1997. In number 37849, he pleaded guilty and received a conviction on July 28, 1997. He was then sentenced in the present case on April 7, 1998. The defendant received an effective sentence of ten years in case number 37849 and was in the process of serving that sentence when he was sentenced in the present case.

At the sentencing hearing below, the trial court determined the defendant to be a Range I, standard offender, for which the Class C punishment range is three to six years. The trial court enhanced the sentence pursuant to Tennessee Code Annotated section 40-35-114(1) (that a defendant has a prior history of criminal convictions or criminal behavior in addition to those necessary to establish the range). The court announced that it accorded some mitigating weight

---

[1]The officer testified that, upon investigation, he determined that the defendant did not reside in the area but lived a quarter to one-half mile away.

3

to the defendant's youth. He was nineteen years of age when he committed the offense; however, the enhancement factor outweighed the mitigating factor and resulted in the court imposing a sentence of five years to be served in the Tennessee Department of Correction. The court imposed this sentence to run consecutively to the effective ten-year sentence in case number 37849.

## I. Sufficiency of the Evidence.

In the defendant's first issue, he argues that the evidence is insufficient to establish that the defendant had any intent to sell cocaine.

It is well established that a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978); State v. Townsend, 525 S.W.2d 842, 843 (Tenn. 1975). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978).

Moreover, a verdict against the defendant removes the presumption of innocence and raises a presumption of guilt on appeal, State v. Grace, 493 S.W. 2d 474, 476 (Tenn. 1973); Anglin v. State, 553 S.W.2d 616, 620 (Tenn. Crim. App. 1977), which the defendant has the burden of overcoming. State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977).

Most significantly, where the sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791-92 (1979); Tenn R. App. P. 13;

4

see also, State v. Williams, 657 S.W.2d 405 (Tenn. 1983).  This rule applies to findings based upon both direct and circumstantial evidence.  State v. Thomas, 755 S.W.2d 838, 842 (Tenn. Crim. App. 1988).  Circumstantial evidence alone may be sufficient to convict one of a crime.  State v. Boling, 840 S.W.2d 944, 947 (Tenn. Crim. App. 1992).

Tennessee Code Annotated Section 39-17-417 makes it an offense to knowingly possess cocaine, a Schedule II controlled substance, with the intent to sell.  Tenn. Code Ann. § 39-17-417(a), (c)(1) (1997).

In the light most favorable to the state, the defendant and another young male were standing in the cul-de-sac at approximately 9:30 p.m. in a low-income housing project area that was known to be a high crime area where drug trafficking, in particular, was a frequent occurrence.  The management of the housing association had complained of non-residents  trespassing in the area and had asked for police assistance in protecting the residents from non-residents bent on mischief.  Against this backdrop, an experienced officer, who had witnessed "flagging" activity on numerous occasions in his previous narcotics investigations, saw the defendant and his companion "flagging" cars which passed the cul-de-sac. Believing that the defendant and his companion were attempting to sell drugs, the officer radioed his fellow officers who were stationed nearby in a police car. Although this car did not bear police insignia, the proof showed that it was readily identified by persons in the community as being a police vehicle and was equipped with government license plates and radio antennae.  When the officers in this car arrived at the cul-de-sac, one of the officers emerged from the car wearing a police "identification jacket" on which the word "police" appeal in yellow letters.  He "lit" the defendant and his companion with a flashlight, identified himself as an officer and stated he wished to speak to them.  The defendant and his companion began to walk away and then ran despite the officer's command, "Police officer, stop."  After apprehending the defendant following a foot chase, the officers searched the

defendant's pockets and found fourteen rocks of crack cocaine inside a piece of foil which was wrapped inside $68 in currency. When the cocaine was discovered, the defendant began to complain loudly to on-looking housing residents that the officers had planted the cocaine on him. The defendant, who had no crack-smoking paraphernalia on his person, was in an area approximately one-quarter to one-half mile from his residence. The fourteen rocks of cocaine found in his pocket totaled 0.5 grams in weight. Some of the rocks were of a size to command a street price of $10 to $20 each.

We hold that these facts amply support a finding that the defendant knowingly possessed crack cocaine with intent to sell.

## II. Sentencing.

The defendant argues that the trial court erred in imposing a five-year sentence and imposing the sentence to run consecutively to the effective ten-year sentence imposed in case number 37849.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." Id. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. Id. If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." State v. Fletcher, 805

6

S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its sentencing determination, the trial court, at the "conclusion of the sentencing hearing," determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210(a), (b) (1997); Tenn. Code Ann. § 40-35-103(5)(1990); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

The record demonstrates that the trial court considered the relevant principles and factors and made findings of fact. Accordingly, we review its sentencing determinations with a presumption of correctness.

The presentence report was made an exhibit to the sentence hearing and reflects that the defendant's previous history of criminal behavior included an "extensive history of using marijuana" and a juvenile adjudication for joyriding. The defendant's Montgomery Circuit Court record in case number 37849, which the trial court judicially noticed, showed that, prior to sentencing in the present case, the defendant committed aggravated robbery.[2] See State v. Chad Douglas Poole, No. 02C01-9506-CC-00178, slip op. at 5-6 (Tenn. Crim. App., Jackson, Jan. 31, 1996) (sentencer may consider criminal convictions or behavior which occurred "prior to the sentencing hearing as constituting a previous history of criminal convictions or criminal behavior, regardless of whether the convictions or behavior occurred before

---

[2]The record in unclear whether case number 37849 also included convictions for aggravated assault and aggravated burglary. The indictment in that case apparently included these charges.

7

or after the criminal conduct under consideration"), aff'd on other grounds, 945 S.W.2d 93 (Tenn.1997). The record, therefore, amply supports the enhancement of the defendant's Range I sentence pursuant to Tennessee Code Annotated section 40-35-114(1). The trial court properly applied this enhancement factor.

The trial court apparently applied mitigating factor (6). Tenn. Code Ann. § 40-35-113(6) (1997) (defendant lacked substantial judgment because of youth or old age). If so, the trial court acted beneficently toward the defendant because we discern no basis in the record for determining that the defendant, due to his youth, lacked judgment. See State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993). Nevertheless, even giving the defendant the benefit of the trial court's largess, the presence of enhancement factor (1) significantly outweighs the mitigating factor and supports the less-than-maximum five-year sentence.

The trial court imposed consecutive sentences based upon its determination that consecutive sentences were mandatory pursuant to the terms of Tennessee Code Annotated section 40-20-111 and Tennessee Rule of Criminal Procedure 32(c). Code section 40-20-111(b) provides:

> In any case in which a defendant commits a felony while such defendant was released on bail . . . and the defendant is convicted of both such offenses, the trial judge shall not have discretion as to whether the sentence shall run concurrently or cumulatively, but shall order that such sentences be served cumulatively.

Tenn. Code Ann. § 40-20-111(b) (1997) (emphasis added). Rule 32(c)(3) provides:

> Where a defendant . . . had additional sentences not yet fully served as the result of the convictions in the same or other court and the law requires consecutive sentences, the sentence shall be consecutive whether the judgment explicitly so orders or not. This rule shall apply:
> . . .
> (c) To a sentence for a felony where the defendant was released on bail and the defendant is convicted of both offenses; . . .

Tenn. R. Crim. P. 32(c)(3) (emphasis added).

These provisions mandate the trial court's imposition of consecutive

8

sentences. The trial court found that the defendant was on bail for the present case when he committed the offense or offenses which resulted in the charges in case number 37849. It is "irrelevant whether the conviction for the first offense, releasing the defendant on bail, occurs prior to the conviction for the second offense, occurring while the defendant is on bail." State v. Blanton, 926 S.W.2d 953, 961 (Tenn. Crim. App. 1996). "[I]t is immaterial whether sentence one is consecutive to sentence two, or vice versa, as the sentences are consecutive in either case." Id.

In passing, we note that the trial court based certain findings upon its judicial notice of its own record in case number 37849. The transcript reflects that the trial judge reviewed the original 37849 file during the sentencing hearing, and by oral announcement he made specific findings about the conviction and sentence in 37849 and about the chronology of events in that case as compared to the events in the present case. Based on his findings, the trial judge concluded, without controversy from the defendant, that the defendant was on bail in the present case when the offense charged in 37849 was committed. To be sure, the trial court was allowed to take judicial notice of its court records, State v. Richard Douglas Lowery, No. 03C01-9604-CC-00146, slip op. at 11-13 (Tenn. Crim. App., Knoxville, May 19 1997) perm. app. denied (Tenn. 1998) (defendant's prior conviction record from the sentencing court judicially noticeable in sentencing hearing, pursuant to Tennessee Rule of Evidence 201(b)(2), (c), (f), and as facilitated by Tennessee Code Annotated section 40-35-202(a) (1997)); however, the records noticed did not find their way into the trial record below or at least into the record on appeal. The better practice is for the trial court to exhibit to the hearing copies of the portions of the noticed, original records which the court relied upon.

Nevertheless, inasmuch as the appellate record does reflect that the trial court took judicial notice and that it entered its findings from that notice on the record, see Richard Douglas Lowery, slip op. at 12, and further that those findings were not contradicted nor challenged by defendant either in the trial court or on

9

appeal, we deem the record sufficient to support the trial court's findings of (1) criminal record based upon the 37849 conviction and (2) the defendant's on-bail status when the 37849 offenses were committed.  See id.  Under the facts of this case, should the judicially noticed records not support the trial court's findings, it behooved the defendant, as the appellant, to assure an appellate record that demonstrated his claim.  "When an appellant or any party seeks review of issues before [this court], that party must prepare a record which conveys a fair and complete account of what transpired in the trial court." State v. Locust, 914 S.W.2d 554, 557 (Tenn. Crim. App. 1995); see Tenn. R. App. P. 24.  In the absence of such a record, this court must "conclusively presume that the judgment of the trial court was correct." Locust, 914 S.W.2d at 557.

The judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., Judge

CONCUR:

_____
JOHN H. PEAY, Judge

_____
DAVID H. WELLES, Judge